Probate Court of Franklin County.

STATE OF OHIO V. LUELLEN D. LAMPMAN, ET AL.

Decided October 25, 1933.

*Gilbert Bettman,* att'y. gen'l., for the state of Ohio.

*Lowery F. Sater,* and *Joseph Platt,* for Luellen D. Lampman.

*Ralph M. Lucas, George Gugle* and *Carl Tressemer,* for Harry M. Freck.

McCLELLAND, J.

This matter is brought to the attention of the court on the objections to a witness being permitted to answer certain questions offered to be propounded by the attorneys for L. D. Lampman, one of the defendants in this matter.

In order that we may rule correctly upon this matter it will be necssary to review the case from the beginning up until the present time.

The state of Ohio, by virtue of a special act of the legislature, appropriated certain property in the city of Columbus, Ohio, as a part of a site for the new state office building. L. D. Lampman and Harry M. Freck, and Hertz Driveurself Stations, Inc., were parties defendant. Upon a hearing before a jury empaneled for that purpose, an award of $230,076.74 was made by the jury. This money was paid into the court on June 5, 1931, and as far as this proceeding is concerned it now remains in the same form.

The record shows that on March 1, 1923, the defendant

L. D. Lampman was the owner in fee simple of the premises which were the subject of this appropriation proceeding; that on or about the 17th day of March, the said Lampman entered into a contract in writing with the defendant Harry M. Freck, by the terms of which he demised and leased to the said Harry M. Freck the above named property for a period of ninety-nine years renewable forever; that on or about the 30th day of July 1926, the defendant Harry M. Freck sub-leased said premises to the Hertz Driveurself Stations, Inc., for a period of five years beginning on said date, with the privilege of renewal for a like period, which lease was for the sum of $1400.00 per month.

As we have stated before, the appropriation proceeding was completed and the award of $230,076.74 was paid into this court on June 5, 1931. On August 17, 1931, the defendant Harry M. Freck filed an answer and cross-petition in this case, setting up the facts of his lease and his sub-lease, together with other pertinent facts, and asked that the interests of the various defendants in the fund be determined by this court, and that the market value of the interest of the defendant Luellen D. Lampman be fixed, and that the balance of said fund, after deducting therefrom the value of the interest of L. D. Lampman be paid to the defendant Freck. Then on September 3, 1931, the defendant L. D. Lampman filed what he calls an "Interpleader" in which the pertinent facts were set forth, and asked that the court order that the award be impounded, and that the income thereof be paid to the said Lampman.

Then on October 1, 1931, Harry M. Freck filed an answer to the interpleader of L. D. Lampman, in which certain allegations of the interpleader were admitted and others denied. It is not necessary that the contents of this pleading be put into the opinion except to state that the defendant Freck renewed the prayer of his answer and cross-petition.

Then on May 24, 1933, the defendant L. D. Lampman filed what he calls an "amended intervening petition," in which the facts of his ownership of the property and the lease to the defendant Freck were set forth in full, and also giving a brief history of the appropriation proceedings and the award of $230,076.74 as hereinbefore mentioned, and

then asked that the value of the interest of Lampman in said premises be fixed and determined by the court.

This court is now engaged in hearing the matter as set forth in the pleadings hereinbefore mentioned. During the trial of the cause the defendant Lampman asked leave to amend at Bar, the prayer of his amended intervening petition, to the effect that the interest of the defendants in the fund so paid into the court be fixed and determined by the court. The court decided that as the pleadings stood at the beginning of the trial, the burden of proof fell upon Mr. Lampman to prove the fair market value of his interest in the property appropriated as of June 5, 1931.

It is contended by Lampman and his counsel that Lampman is the owner of a fee, and that the defendant Freck is the owner of a ninety-nine year lease renewable forever, and that the court should receive testimony as to the value of the interest of Mr. Lampman and also the value of the interest of the defendant Harry M. Freck the lessee..

The defendant Freck and his counsel take the position that Freck was the owner of a fee, and that Lampman owned an interest in the nature of a mortgage. Regardless of the terminology which may be used by counsel and their clients in describing the respective interests we do know that their interests are specifically defined by their contract, which we have designated a ninety-nine year lease renewable forever.

Mr. Lampman introduced several witnesses, who gave their opinion as to the fair market value of the interest of Mr. Lampman in said premises as of June 5, 1931, and it appears that the defendant Lampman is attempting to establish his interest by capitalizing rentals during the entire period of the lease, and of course are assuming that there shall be no defaults in the payments of the rentals. We believe he has adopted a correct rule by which his interest in the property may be calculated; that is, that we should assume that the lease would be carried out, and that the future rentals should be computed at their worth on June 5, 1931, and that the cash value of Lampman's interest should be arrived at by deducting from the amount of the capitalized rentals such an amount as the custom in this community indicates, should be deducted therefrom,

Upon examination of the testimony of the witnesses we are of the opinion that by the custom established and which existed at the time, the cash value of the fee holders interest subject to a 99 year lease, was from 25% to 40% less than the capitalized value of the rentals, and we therefore believe and so hold, that in this case the cash value of Mr. Lampman's interest should be calculated 33 1/3% less than the capitalized value of the future rentals.

The court, in the course of the trial restricted the testimony to the fair market value of the interest of Mr. Lampman in the property on June 5, 1931, but counsel for Mr. Lampman, upon cross examining one of the witnesses for Mr. Freck, then asked the witness to give his opinion as to the fair market value of the interest of Mr. Freck in that property on June 5, 1931. Objection was made by counsel for Freck, and the court refrained from ruling upon said objection until further investigation could be made relative thereto.

Counsel for the defendant Freck also asked for a continuance for the purpose of bringing other witnesses to the court who were not then available.

In order that we may properly rule upon the objection, it becomes necessary to determine or lay down a rule under which the award may be distributed between the lessor and the lessee.

The defendant Lampman takes the position that the interest of the lessor and lessee should both be determined, and then the award distributed between the two defendants in proportion to their interests in the property so appropriated. We have already set forth the rule which has been adopted by Lampman to determine his interest, which rule we believe to be correct.

Now suppose that an attempt should be made to prove the value of the interest of Mr. Freck in the property. What element should be taken into consideration? In calculating the interest of Mr. Lampman, the lessor, we have assumed that there is a continual obligation on the part of Mr. Freck under his lease for 99 years renewable forever. If we assume this obligation on the part of Mr. Freck in computing Lampman's interest we must be fair to him, and also in computing his interest we must assume his continued lia-

bility under the lease. In other words we cannot assume a default on the part of Mr. Freck in calculating his interest, and assume a continuing obligation on his part in calculating the interest of Mr. Lampman. We therefore must assume that Mr. Freck will never default in the performance of any of his obligations under the lease, and we believe it fair to assume that during a great portion of the continuance of his lease, he would be making some profit thereby. If he would not be making a profit he would default; but we cannot assume that he will default because we are assuming the continued performance of his obligations in calculating the interest of Mr. Lampman. Now, while we are assuming the continued obligation on the part of Mr. Freck and his continual performance of these obligations, what other element can we take into consideration?

We do know that up until the time of the appropriation there were no existing defaults on the part of Mr. Freck in the performance of his obligations thereunder. We also know that he had a sub-lease with Hertz Driveurself Stations, Inc., with a rental of $1400.00 per month, which of course more than carried his rentals. We cannot assume that he could not renew the lease or that he could not sub-lease it to some other person at a higher rental. If we assume that he could not sub-lease the property at the termination of that lease, we have no right to assume that this inability would continue forever, because we are assuming that there will never be a default on his part. No one has sufficient foresight to determine what Mr. Freck might do in 10, 15, 25, 50 or 100 years hence, and, prediction thereof would go so far into the field of conjecture as to have no probative value whatever. We therefore feel that under the rule hereinbefore mentioned there would be no stabilized element other than his continued liability, which could be taken into consideration in determining the interest of Mr. Freck in that property at the time above mentioned; and we therefore feel that the suggestion and prayer of Mr. Lampman is one which cannot be followed or granted by the court.

We must also take into consideration another fact in determining this question. Mr. Lampman's interest is fixed and determined. When he made the lease with Mr. Freck,

he conveyed to Mr. Freck almost all of the incidents of ownership and control. Mr. Freck took thereby an estate of inheritance. He obligated himself to pay a stipulated rent to Mr. Lampman, to pay the taxes, the upkeep and repairs, and to rebuild the property in case of its destruction. The only interest which Mr. Lampman retained in the property was his right to receive the rentals, and also his right of forfeiture in the case of non-performance on the part of Mr. Freck or those holding under him. As long as Mr. Freck paid the rentals, Mr. Lampman had no further interest in the property or control over it; and as the law provided at that time, Mr. Freck had the continuing liability whether he was able to sub-lease the property or not. Mr. Lampman took no risk whatsoever. Mr. Freck did take the risk of being able to sub-lease the property or assign it for a sufficient consideration to reimburse him for the ground rentals. He took the risk of profit or loss. If he profited the lessor's interest would thereby become more secure. If he lost and was unable to perform his obligations under the lease, then Mr. Lampman had the entire leasehold as his security. And for that reason, we believe there is strong justification for the position of Mr. Freck, that after Mr. Lampman's interest in the award is determined, then the balance should go to him.

Not only are we fortified by a principle of equity as hereinbefore set forth, but we are bound in our opinion by the decision of Judge Marshall in the Ralston case, in determining the matter at bar. Judge Marshall in the Ralston case held that the interest of a lessee for ninety-nine years, renewable forever is real property. At page 318, Ohio State Reports, 112, he uses the following language:

"The estates and interests of both grantor and grantee are inheritable and descend to the heirs, and neither is subject to the laws of distribution. The grantee has a corporeal hereditament and the grantor has the right to receive the rents forever, which amounts to an incorporeal hereditament."

He also quotes 28 Corpus Juris at page 842 as follows:

"In the absence of any statute effecting the common-law status of a conveyance in fee of land to one, with reservation of ground rent to the other, each party is the owner of

a fee-simple estate: the grantee's estate being a corporeal inheritance in fee in the land out of which the rent issues, and the grantor's estate being an incorporeal inheritance in fee in the rent reserved."

He also quotes from page 846 of Volume 28 as follows:

"A grant or lease in fee reserving rent operates as an assignment or sale and not as a lease, although, for some purposes, the relation of lord and tenant, or of landlord and tenant, may be assumed to exist between the parties. Properly speaking, a term of years or other certain period of time and a reversion seem to be indispensable to the idea of a lease."

We believe that in the determination of this matter we are bound by the ruling of Judge Marshall in that case. We therefore, in this particular case must consider the defendant Freck to be the owner of the fee, and the entire interest of Mr. Lampman to be similar to that of a mortgage. In other words, Mr. Lampman's interest is a fixed and a determinable interest, no more or no less; and after determining his interest or his lien, if we call it such, the value of that interest should be deducted from the award, and the balance go to Mr. Freck the owner of the fee.

We therefore are compelled to reach the conclusion that we cannot receive any testimony as to the value of the interest of Mr. Freck in said property, and that under the law and such rules as we have been able to ascertain, we must restrict the testimony to the consideration of the value of the interest in, or lien of Mr. Lampman in the property appropriated as of June 5, 1931, and the balance should go to Mr. Freck.

In calculating the interest of Mr. Lampman, as we have said before, we should assume the continuing liability of Mr. Freck and his continuing ability to perform his obligations, and the rentals should be computed for their present worth as of June 5, 1931. This then, would give the capitalized value upon a rental basis. From this should be deducted an amount equal to 1/3 thereof, and the balance should be the fair market value of the interest of Mr. Lampman. This amount should be deducted from the award and the balance should go to Mr. Freck.

We might also state that this method of computation is that adopted by Judge Rogers in the Fink case, and was also approved by the Court of Appeals of this district.

We also might add that had Mr. Freck sub-leased the property for the entire period, then we would have had some established element by which his interest as lessee could be computed. Calculation of the value of his lessee's estate would be subject to the same difficulties that we now find in the valuation of the lessee's interest in the present case.

We wish to make a reflection in regard to one other matter. The court permitted certain questions to be propounded to various witnesses, which questions included a statement of the essential provisions of the lease, and also a statement of the fact that the jury had made an award of $230,076.74 in an appropriation proceeding. We believe that we erred in permitting this element to be included in the question; but as the matter stands we feel that the error was not material and did in no manner prejudice the rights of either of the parties.

With these matters now determined the hearing may proceed at the pleasure of counsel.

Upon reconvening of the court, counsel for Mr. Lampman, the lessor again offered to introduce testimony as to the value of the interest of Mr. Freck in the property, and the court for the reasons hereinbefore stated refused to hear such testimony and adheared to the rule as hereinbefore adopted. Counsel then read into the record the questions and answers thereto, which would have been put to the witnesses had the testimony been admitted, after which both parties rested.

In our opinion above given, it was not necessary at that time to discuss the rate of interest upon which future rentals should be calculated. Upon examination of the transcript of the testimony, we are of the opinion that the rentals in this case should be calculated on the basis of $5\frac{1}{2}\%$, which rate we hereby adopt in this proceeding. To all of which rulings both parties at the time took exception.